Filed 1/21/15  In re Luis R. CA2/7

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SEVEN

| | |
|---|---|
| In re LUIS R. et al., Persons Coming Under the Juvenile Court Law. | B255663<br><br>(Los Angeles County<br>Super. Ct. No. CK91901) |
| LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND FAMILY SERVICES,<br><br>        Plaintiff and Respondent,<br><br>        v.<br><br>DIANA R.,<br><br>        Defendant and Appellant. | |

APPEAL from orders of the Superior Court of Los Angeles County, D. Zeke Zeidler, Judge.  Affirmed.

Daniel G. Rooney, under appointment by the Court of Appeal, for Defendant and Appellant.

Richard D. Weiss, Acting County Counsel, Dawyn R. Harrison, Assistant County Counsel, and Melinda A. Green, Deputy County Counsel, for Plaintiff and Respondent.

_____

Diana R., the mother of 12-year-old Luis, 11-year-old Marco, seven-year-old Ariana and two-year-old Christopher, appeals from orders denying in part her petition to modify prior orders of the juvenile court pursuant to Welfare and Institutions Code section 388.[1] Diana asked the court to take off calendar the previously scheduled selection and implementation hearing (§ 366.26) and to return her four children to her home or, in the alternative, to reinstate family reunification services with liberalized visitation. The juvenile court granted Diana's request for greater visitation but denied the remainder of the petition without an evidentiary hearing. We affirm.

### FACTUAL AND PROCEDURAL BACKGROUND

On February 16, 2012 the Los Angeles County Department of Children and Family Services (Department) filed a petition under section 300, subdivision (b) (failure to protect), alleging Diana's use of amphetamines and methamphetamine rendered her incapable of caring for her four children. The Department had received reports Diana was using illegal substances and the children were dirty and hungry and had been left unsupervised. Although the Department had initially planned to file a non-detain petition and work with Diana, it detained the children after Diana had a positive drug test.

Following a hearing the juvenile court ordered the children detained and gave the Department discretion to place them with an appropriate relative. The court ordered the Department to provide family reunification services for Diana and monitored visitation at least three times a week.

After further investigation and a telephone interview with Reyes R., the children's father who was then living in San Jose, California, on March 27, 2012 the Department filed a first amended petition under section 300, subdivisions (a) (nonaccidental serious physical harm), (b) (failure to protect) and (g) (no provision for support). The amended petition alleged the children were at risk of serious physical harm due to physical abuse by Reyes and domestic violence between Diana and Reyes. It further alleged the children

---

[1]     Statutory references are to the Welfare and Institutions Code.

were at risk due to Diana's substance abuse and her mental and emotional problems and Reyes's failure to provide them with the basic necessities of life.

Prior to the jurisdiction and disposition hearing, Diana missed three drug tests and had one positive test. In addition, Diana brought her boyfriend with her to visits with the children even though the Department had instructed her not to do so. Pursuant to a mediated agreement Diana did not contest the allegations her substance abuse and mental and emotional problems placed the children at risk. She agreed to placement of the children with the maternal grandmother. She also agreed to complete a parenting class, to participate in mental health treatment and counseling and to participate in a substance abuse rehabilitation program. The juvenile court sustained the amended petition,[2] ordered the children placed with their maternal grandmother with Diana to have monitored visitation at least twice a week and directed the Department to provide Diana with family reunification services.

The juvenile court found Diana in partial compliance with her case plan at the six-month review hearing (§ 366.21, subd. (e)). As reported by the Department, the children were living with their maternal grandmother; Diana had enrolled in a parenting class and was drug testing about half the time; she was visiting the children regularly, but she disregarded instructions and discussed case issues with the children. The court ordered the Department to continue providing family reunification services.

In its report for the 12-month review hearing (§ 366.21, subd. (f)) on April 15, 2013, the Department stated Diana had enrolled in a substance abuse counseling program on March 6, 2013 and was largely in compliance with drug and alcohol testing requirements with only two missed tests. She had completed her parenting classes and was visiting regularly with the children. However, it did not appear she was participating in psychiatric consultations or individual counseling to address mental health problems. The maternal grandmother, as well as others, expressed concern regarding Diana's

---

[2]     The court also sustained amended allegations relating to Reyes, who is not a party to this appeal.

3

mental health and her ability to care for the children. The court found Diana in partial compliance with her case plan and ordered continued family reunification services.

The Department reported for the 18-month permanency review hearing (§ 366.22) on August 13, 2013 that Diana was in substance abuse counseling and attending a class to address issues stemming from past abuse. She had been inconsistent in drug testing, however; and she was not receiving mental health counseling or psychiatric treatment. The children were doing well in the maternal grandmother's home. Luis had not visited with Diana for two months due to comments she made after he told her he did not want to live with her. According to Luis, who had previously told the social worker he did not want to reunify with Diana and had expressed concern about her ability to take good care of him and his siblings, Diana said, "You made your decision, you don't count."

The hearing was continued to November 4, 2013. The Department reported Diana had completed her substance abuse program and planned to continue with aftercare. Although she reportedly had drug tested through the program, the Department had not received the results; and Diana had not participated in drug testing for the Department since July 2013. Diana still had not started mental health counseling but expected to start soon. The court again found Diana was only in partial compliance with her case plan. It terminated family reunification services and set a permanent plan selection and implementation hearing (§ 366.26) for March 6, 2014.

The Department reported the maternal grandmother wanted to adopt the children and her adoption home study had been approved. Ariana told the social worker Diana had said to Ariana she would be coming to live with Diana soon and Ariana believed her. Nonetheless, Ariana was amenable to adoption by the maternal grandmother.

On March 3, 2014, three days before the scheduled selection and implementation hearing, Diana filed a petition to modify court orders (§ 388). Diana requested the selection and implementation hearing be taken off calendar and the children placed with her or, in the alternative, her family reunification services reinstated and her visitation liberalized. In support of her petition Diana stated since the November 4, 2013 hearing she "has been participating in weekly individual therapy, underwent a mental health

4

evaluation, takes her medication as prescribed and sees a psychiatrist monthly. Diana has maintained her sobriety upon completion of her drug rehab program and made significant and proactive strides to resolve the case issues." The proposed change would be in the best interests of her children, Diana asserted, because she "is in compliance with the initial court ordered case plan and has worked hard to address her mental health and substance abuse issues. Diana loves her children and is eager to reunify with them."

The court denied the section 388 petition without a hearing as to Diana's requests to place the children with her and to reinstate family reunification services. It explained the request did not identify a sufficient change of circumstances and it was premature to place the children with Diana. In addition, the court explained Diana did not have a legal right to reunification services once the court had set a selection and implementation hearing. The court set a hearing on Diana's request for liberalized visitation for April 9, 2014 and continued the selection and implementation hearing to May 14, 2014.

At the April 9, 2014 hearing the juvenile court granted Diana unmonitored visitation not to exceed four hours at least twice a week on the condition it be in a public setting and one of the two older children be present when Diana visited with the younger children. The court ordered Diana not to discuss with the children the original allegations in the case or their possible return to her custody. The court also gave the Department discretion to further liberalize visitation.[3]

## DISCUSSION

1. *Section 388 and the Standard of Review*

Section 388 provides for modification of juvenile court orders when the moving party presents new evidence or a change of circumstances and demonstrates modification of the previous order is in the child's best interests. (*In re Stephanie M.* (1994) 7 Cal.4th

---

[3] At the continued section 366.26 hearing on July 16, 2014 the court found the children were not adoptable, declined to terminate Diana's parental rights and appointed the maternal grandmother the children's legal guardian. We take judicial notice of the July 16, 2014 minute order. (Evid. Code, §§ 452, 459; see *In re Daisy H.* (2011) 192 Cal.App.4th 713, 716; *In re Karen G.* (2004) 121 Cal.App.4th 1384, 1390.)

295, 317; *In re Jasmon O.* (1994) 8 Cal.4th 398, 415; *In re Y.M.* (2012) 207 Cal.App.4th 892, 919; see Cal. Rules of Court, rule 5.570(e).)[4] To obtain a hearing on a section 388 petition, the parent must make a prima facie showing as to both of these elements. (*In re Brittany K.* (2005) 127 Cal.App.4th 1497, 1504; *In re Justice P.* (2004) 123 Cal.App.4th 181, 188.) The petition should be liberally construed in favor of granting a hearing, but "[t]he prima facie requirement is not met unless the facts alleged, if supported by evidence given credit at the hearing, would sustain a favorable decision on the petition." (*In re Zachary G.* (1999) 77 Cal.App.4th 799, 806; accord, *In re Brittany K.*, at p. 1505.) "In determining whether the petition makes the necessary showing, the court may consider the entire factual and procedural history of the case." (*In re Justice P.*, at p. 189.)

Even if a parent presents prima facie evidence supporting the allegations contained in the petition, however, "[a] petition [that] alleges merely changing circumstances and would mean delaying the selection of a permanent home for a child to see if a parent, who has repeatedly failed to reunify with the child, might be able to reunify at some future point, does not promote stability for the child or the child's best interests." (*In re Casey D.* (1999) 70 Cal.App.4th 38, 47; accord, *In re Mary G.* (2007) 151 Cal.App.4th 184, 206.) The parent must also "show that the undoing of the prior order" would be in the child's best interests. (*In re Kimberly F.* (1997) 56 Cal.App.4th 519, 529; accord, *In re Mickel O.* (2011) 197 Cal.App.4th 586, 615.)

We review the summary denial of a section 388 petition for abuse of discretion. (*In re A.S.* (2009) 180 Cal.App.4th 351, 358; *In re Brittany K.*, *supra,* 127 Cal.App.4th at p. 1505.) We may disturb the juvenile court's exercise of that discretion only in the rare

---

[4]     Section 388 provides a parent or other interested party "may, upon grounds of change of circumstance or new evidence, petition the court . . . for a hearing to change, modify, or set aside any order of court previously made . . . . [¶] . . . [¶] . . . If it appears that the best interests of the child . . . may be promoted by the proposed change of order, . . . the court shall order that a hearing be held . . . ."

case when the court has made an arbitrary, capricious or "patently absurd" determination. (*In re Stephanie M., supra,* 7 Cal.4th at p. 318.)

   2. *The Juvenile Court Did Not Abuse Its Discretion in Summarily Denying Diana's Section 388 Petition*

The juvenile court did not abuse its discretion in summarily denying Diana's section 388 petition. Indeed, Diana does not contest the juvenile court's implied finding her petition alleged only changing circumstances, which rendered it "premature" to place the children with her, or otherwise challenge the summary denial of her petition to have the children returned to her custody. (See *In re A.S.*, *supra*, 180 Cal.App.4th at p. 358.) However, she contends the court's summary denial of her request for reinstatement of family reunification services was an abuse of discretion, arguing its ruling "eviscerates the escape clause function of a section 388 petition."

"After the termination of reunification services, the parents' interest in the care, custody and companionship of the child are no longer paramount. Rather, at this point 'the focus shifts to the needs of the child for permanency and stability' [citation], and in fact, there is a rebuttable presumption that continued foster care is in the best interest of the child." (*In re Stephanie M., supra,* 7 Cal.4th at p. 317.) The Supreme Court in *In re Marilyn H.* (1993) 5 Cal.4th 295, explained, "A hearing pursuant to section 366.26 to select and implement a permanent plan for the children is to be heard within 120 days from the time it was set. [Citations.] The court need not continue to consider the issue of reunification at the section 366.26 hearing. The burden thereafter is on the parent to prove changed circumstances pursuant to section 388 to revive the reunification issue. Section 388 provides the 'escape mechanism' that mother maintains must be built into the process to allow the court to consider new information." (*Id.* at p. 309; accord, *In re Hunter S.* (2006) 142 Cal.App.4th 1497, 1506.)

Although Diana's opening brief appears to question the juvenile court's statement she had no right or entitlement to reinstatement of reunification services once the

7

selection and implementation hearing had been scheduled,[5] in her reply brief Diana concedes the court was correct. Rather, she asserts only that reinstatement was an available option and contends she had made a sufficient prima facie showing of changed circumstances to justify an evidentiary hearing to evaluate her petition.

The experienced juvenile court judge presiding in this case plainly understood his discretion to reinstate reunification services upon an adequate showing and properly exercised that discretion in denying the petition without an evidentiary hearing: Diana received a full 18 months of reunification services even though those services could have been terminated at the six-month review hearing because Christopher was under the age of three at the time of his detention. (See § 361.5, subd. (a)(1)(B), (C).) Throughout the reunification period Diana failed to participate in court-ordered mental health counseling and treatment, initiating this significant part of her original case plan only after services had been terminated and the selection and implementation hearing scheduled. She made no showing further delay in implementing a permanent plan for the children while she began to address these issues would be in their best interests. While we do not question the sincerity of Diana's statement that she loves her children and wants to reunify with them, more is required. (See, e.g., *In re Amber M.* (2002) 103 Cal.App.4th 681, 686-687.) The focus of a section 388 petition must be on the children's needs and circumstances (*In re Vincent M.* (2008) 161 Cal.App.4th 943, 960); Diana failed to show

_____

5    Diana cites section 361.5, subdivision (a)(4), in her opening brief, which provides "court-ordered services may be extended up to a maximum time period not to exceed 24 months after the date the child was originally removed from physical custody of his or her parent or guardian." Such an extension is permitted, however, only "if it is shown, at the hearing held pursuant to subdivision (b) of Section 366.22, that the permanent plan for the child is that he or she will be returned safely home within the extended time period." As discussed, the 18-month review hearing pursuant to section 366.22 was held in this case in November 2013, four months prior to the filing of the section 388 petition; there was no showing at that hearing either that the permanent plan for the children was a return to Diana's home or that it was likely the children could be safely maintained in Diana's home with an additional six months of services.

that providing additional reunification services to her would in any way satisfy those needs.

## DISPOSITION

The orders are affirmed.

PERLUSS, P. J

We concur:

WOODS, J.

ZELON, J.

9